David Sanford (*pro hac vice* forthcoming)
dsanford@sanfordheisler.com
SANFORD HEISLER, LLP
1666 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20009
Telephone: (202) 499-5201
Facsimile: (202) 499-5119

Felicia Medina (SBN 255804)
fmedina@sanfordheisler.com
Xinying Valerian (SBN 254890)
xvalerian@sanfordheisler.com
SANFORD HEISLER, LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

Eric C. Kastner (SBN 53858)
eck@kastnerkim.com
Daniel H. Qualls (SBN 109036)
dhq@kastnerkim.com
KASTNER | KIM LLP
1451 Grant Road, Suite 104
Mountain View, CA 94040
Telephone: (650) 967-7854
Facsimile: (650) 386-1885

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARCELLA JOHNSON, On Behalf of Herself and All Others Similarly Situated, <br><br> PLAINTIFF, <br><br> v. <br><br> ORACLE AMERICA, INC., <br><br> **DEFENDANT.** | Case No. _____ <br><br> **COMPLAINT** <br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff Marcella Johnson ("Plaintiff" or "Ms. Johnson"), individually and on behalf of all others similarly situated, brings this Class Complaint against Defendant Oracle America, Inc. ("Defendant" or "Oracle"). Plaintiff alleges upon knowledge as to herself and her own acts, and otherwise upon information and belief, as follows:

**INTRODUCTION**

1. Plaintiff, a former sales representative employed by Oracle, brings this class lawsuit against Oracle on behalf of herself and all others similarly situated to recover commission wages unlawfully withheld by Oracle in violation of contract and the California Labor Code.

2. A Fortune 100 technology giant, Oracle has systematically stiffed its salesforce of earned commission wages for many years, by scrapping contractual compensation plans when they yield commission earnings that are higher than Oracle would prefer to pay and retroactively imposing inferior – *i.e.* less remunerative – numeric terms. Simply put, Oracle routinely decides to change commission formulas so as to reduce commission payments on past sales, well after the commissions have been earned and even sometimes after they have been paid.

3. Oracle coerces employees into accepting re-plans by threatening that if they fail to accept the new commission plans within 24 hours, they will not be paid pending commissions at all. Even if a bold employee refuses to agree to an inferior re-plan, Oracle barrels ahead anyway, applying the re-plan terms to both past and future sales.

4. As a result of re-plans, Oracle "claws back" previously paid commissions. If employees cannot afford to fork over substantial sums, employees are left with a Hobson's choice: pay off the supposed debt by continuing to work for Oracle without being paid commissions or be threatened with a collections lawsuit if they leave before completely paying off their negative commission balance.

5. To ordinary employees, Oracle is not transparent or upfront about when and why it does "re-plans," however. Sales employees only see that their commissions

2
COMPLAINT

are reduced or being clawed back by Oracle and, if they press for explanations, they may be told that they were re-planned. These re-plans are rooted in compensation policies which unlawfully provide that Oracle can reduce commissions retroactively based on opaque and secret criteria.

6.  Although seemingly arbitrary to the sales employees, Oracle's practices are anything but. Led by the finance department and supported by sales operations and compensation department employees, Oracle reduces commissions through systematic processes designed to align commissions with financial forecasts and bottom line goals. Over the years, Oracle has taken millions of dollars from commission wages to add to its bottom line.

7.  Oracle's commission policies and practices violate the contractual compensation plans accepted by sales employees. They violate the California Labor Code's prohibitions on deducting wages to defray ordinary business costs and secretly paying a lower wage while purporting to pay the wage designated by contract. They contradict the Labor Code requirement that commission contracts be transparent about the methods for computing and paying commissions. They are fundamentally unfair business practices.

8.  Through this class action, Plaintiff challenges Oracle's practice of imposing retroactive changes in commission plans that result in loss of pay. Plaintiff seeks to recover unpaid wages, waiting time penalties, reasonable attorneys' fees and costs, and all other appropriate relief to which Plaintiff and class members are entitled.

## JURISDICTION AND VENUE

9.  This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act. The amount in controversy exceeds $5,000,000 and there are members of the proposed Class who are citizens of a State different from the States of citizenship of Defendant Oracle.

10. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b) because Defendant is headquartered in and conducts substantial business in the Northern

District of California and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

11.   This action is properly assigned to the San Francisco Division of this District pursuant to Civil Local Rule 3-2(c) and (d) because a substantial part of the events or omissions which give rise to the claim occurred in San Mateo County, which is served by the San Francisco Division.

## THE PARTIES

12.   Defendant Oracle is a Delaware Corporation with its corporate headquarters in Redwood City, San Mateo County, California.

13.   Oracle was and is an employer under the California Labor Code and common law.

14.   Oracle employed Plaintiff and other employees performing sales work for Oracle in California.

15.   Plaintiff Marcella Johnson is an individual residing currently in Modesto, California. She worked for Oracle in 2013 and 2014 in Oracle's offices in Redwood City.

## CLASS ACTION ALLEGATIONS

16.   Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 seeking injunctive and monetary relief for Oracle's systemic refusal to pay full commissions earned by sales employees.

**A.    Class Definition**

17.   The proposed Class consists of all commissioned sales employees who have been or will be employed by Oracle in California at any time from the date that is four years before the filing of this Complaint to the present, to whom Oracle issued revised commission agreements which retroactively applied inferior – *i.e.* less remunerative – numeric terms (including but not limited to higher quotas and lower commission rates) to completed sales.

18.   Plaintiff is a member of the Class she seeks to represent.

19. The sales commission practices described herein have been and are continuing in nature.

20. Plaintiff reserves the right to amend the class definition based on discovery or legal developments.

**B.  Requirements of Rule 23(a) and Rule 23(b)(3)**

    **i.  Numerosity and Impracticability of Joinder**

21. The proposed Class is so numerous that joinder of all members is impracticable.

22. Upon information and belief, there are more than 1,000 members of the proposed Class.

23. The Class members are ascertainable through Oracle's centralized and electronically maintained records.

    **ii.  Common Questions of Law and Fact**

24. The prosecution of Plaintiff's claims will require the adjudication of numerous questions of law and fact common to the Class. The common questions of law and fact predominate over any questions affecting only individual Class members. The common questions include:

    a.  Whether Defendant retroactively reduced commission wages by applying revised commission agreements containing inferior – *i.e.* less remunerative – numeric terms;

    b.  Whether the terms of Defendant's standardized commission contracts comply with California law governing earned commission wages;

    c.  Whether terms within Defendant's standardized commission contracts comply with California Labor Code Section 2751;

    d.  Whether Defendant's commission policies and practices comply with California Labor Code Section 221; and

    e.  Whether Defendant's commission policies and practices comply with California Labor Code Section 223.

### iii. Typicality of Claims and Relief Sought

25. Plaintiff has suffered the same violations and similar injuries as other Class members arising out of and caused by Defendant's common course of conduct. All Class members were subject to the same corporate practices, as alleged herein, of reducing commission payments.

26. Plaintiff possesses and asserts each of the claims she asserts on behalf of the proposed Class. She seeks similar relief as other Class members.

### iv. Adequacy of Representation

27. Plaintiff's interests are coextensive with those of the members of the proposed Class. Plaintiff is willing and able to represent the proposed Class fairly and vigorously as she pursues her similar individual claims in this action.

28. Plaintiff has retained counsel sufficiently qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate a class action of this size and complexity.

### v. Efficiency of Class Prosecution of Class Claims

29. A class action is superior to other available means for the fair and efficient adjudication of this controversy. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly where individual class members lack the financial resources to vigorously prosecute a lawsuit against a large corporation such as Oracle.

30. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

31. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are often fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the

complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

32. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

33. The issues in this class action can be decided by means of common, class-wide proof. In addition, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

**C.     Requirements of Rule 23(b)(2)**

34. Oracle has acted on grounds generally applicable to Plaintiff and the proposed Class by adopting and following systemic policies, practices, and procedures that deprive sales employees of earned commission wages. Refusal to pay all commission wages is Oracle's standard operating procedure rather than a sporadic occurrence.

35. Oracle has acted or refused to act on grounds generally applicable to Plaintiff and the proposed Class. Oracle's systemic conduct justifies the requested injunctive and declaratory relief with respect to the Class as a whole.

36. Injunctive, declaratory, and affirmative relief are a predominant form of relief sought in this case. Entitlement to declaratory, injunctive, and affirmative relief flows directly and automatically from proof of Oracle's refusal to pay all commission wages.  In turn, entitlement to declaratory, injunctive, and affirmative relief forms the factual and legal predicate for the monetary and non-monetary remedies for individual losses caused by Oracle's systemic refusal to pay full commissions.

**D.     Rule 23(c)(4) Issue Certification**

37. Additionally, or in the alternative, the Court may grant "partial" or "issue" certification under Rule 23(c)(4).  Resolution of common questions of fact and law would materially advance the litigation for all Class members.

7

# FACTS

## A. Oracle's Sales Commissions Policies, Practices and Procedures

38. Defendant Oracle committed the following acts knowingly, intentionally and willfully.

39. The Oracle policies, practices and procedures alleged in this Complaint existed at all relevant times, *i.e.*, going back at least four years from the date of this Complaint, and they are continuous and ongoing.

40. Typically, commission wages constitute a significant portion of Oracle sales employees' compensation.

41. When Oracle hires sales employees, it offers and the employees accept compensation in the form of base salary and commissions.

42. Oracle provides each sales employee with an Individualized Compensation Plan ("Comp Plan") containing commission rates, sales targets (i.e., quotas) and other numeric terms, along with written Terms and Conditions of Incentive Compensation ("T&C"). The Comp Plan sets forth the formula by which commissions are to be calculated.

43. Oracle considers the Comp Plan and the T&C to be the commission contract required by California Labor Code Section 2751.

44. The T&C is identical for all Class members.

45. After an employee starts work in a sales position, Oracle issues the commission contract to the employee through a process of electronically distributing and obtaining employee acceptance of the T&C and the Comp Plan.

46. Oracle requires employees to first click "accept" for the T&C, after which Oracle then provides the Comp Plan to the employees. Next, employees are asked to click "accept" for the Comp Plans. Compliance with this acceptance process is required for employees to be eligible to receive commission payments for past and future work.

47. At various points after an initial Comp Plan is in place, Oracle issues revised Comp Plans to some employees through this same procedure. Typically, Oracle

issues revised Comp Plans to employees soon after the start of the fiscal year – usually sometime in mid-to-late June. Oracle also issues revised Comp Plans at other times.

48. Revised Comp Plans that affect past sales retroactively are known as "re-plans." Re-plans apply to sales transactions that have already been completed by Class members. Re-plans affect past sales going back to a date of Oracle's choosing, sometimes to the beginning of the same fiscal year and sometimes to a date in a previous fiscal year.

49. The retroactivity is apparent based on the effective date stated on the face of the new Comp Plan.

50. Oracle's commission contracts set forth conditions precedent to the payment of commissions. Generally, commissions are calculated and paid after transactions are booked or revenue is recognized. The T&C sets forth the commission calculation triggers and payment triggers for the different products sold by Oracle.

51. Oracle's commission contracts contain identical clauses authorizing reductions to commissions. These uniform clauses state that Oracle has discretion to, at any time: (a) retroactively reduce commission payments and to otherwise determine the amount of commissions paid; and (b) to deviate from, modify, cancel and/or replace any term of a commission contract (*e.g.*, Comp Plan), such as the commission rates and quotas.

52. When sales employees press for explanations, Oracle cites to terms in the standardized commission contract that reserves discretion to Oracle to adjust commissions at any time.

53. Oracle's criteria used to reduce commissions are not set forth in Oracle's T&C or compensation plans.

54. By the terms of the commission contract, and in practice, Oracle possess total, unilateral discretion to reduce commission payments and terms by which commission are calculated at any time of its choosing, based on undisclosed criteria.

55. These contract terms are unlawful, void and unenforceable under California law. The law prohibits the use of such discretionary power to the deny

employees the benefits of their commission contracts.

56. Oracle commonly uses re-plans to retroactively reduce employees' commissions.

57. Typically, such a re-plan would reduce the commission rate and/or increases the quota. Instead of paying the commissions called for by the employee's Comp Plan in effect, Oracle replaces it with a Comp Plan containing a higher quota or a lower commission rate, and applies the revised numeric terms retroactively to sales transactions that Class members have already completed.

58. Thus, the re-plan is a mechanism of changing an employee's commission contract in a way that reduces commissions already earned.

59. Oracle's commission compensation policies and procedures are based on the overriding goal of aligning its financial performance with its financial forecasts. This is an ever-evolving process of scrutinizing and adjusting the Comp Plans that are in place and changing commission calculations occurring on booked transactions.

60. In so doing, Oracle reduces commissions to offset business costs which are beyond Oracle Employees' work and their control. Through the use of re-plans, Oracle effectively deducts ordinary costs of doing business from the earned commissions of sales employees.

61. The adjustments can occur at any time, including after commissions have already been paid to the employees. For example, Oracle sometimes issues a re-plan for an already-concluded fiscal year, months after the end of a fiscal year, with the effect of reducing the commissions for the prior year.

62. If commissions have already been paid to the employee, but the commissions have been retroactively reduced, Oracle "claws back" the commissions already earned and paid. Current employees either have to continue working for Oracle without getting paid any commissions – as newly earned commissions are deducted to pay off the negative commissions balance – or face the prospect of a collection demand and legal claim from Oracle.

63. It is Oracle's policy and practice to implement such clawbacks by deducting monies from commissions as they are earned by employees who continue working, and by demanding repayment from former employees.

**B.     Plaintiff Marcella Johnson**

64. Plaintiff Marcella Johnson's experience is typical and illustrative.

65. Plaintiff joined Oracle in March 2013. Plaintiff worked in a division called Human Capital Management, selling Oracle software for managing human resources and personnel.

66. Oracle issued the T&C and a Comp Plan to Plaintiff in accordance with the standard procedures described above.

67. Plaintiff did not receive any commission payments from the start of her employment until November 2013.

68. In November 2013 and December 2013, Oracle paid Plaintiff commission wages for numerous completed sales transactions in accordance with the numeric terms of the Comp Plan then in effect.

69. After these payments, Plaintiff was "re-planned" and given a lower commission rate, which Oracle applied retroactively to the beginning of the fiscal year, June 2013.

70. This re-plan reduced Plaintiff's earned commissions on past sales transactions significantly. After the re-plan, Plaintiff suddenly had a negative commission balance of approximately $20,000.

71. The re-plan resulted in a "negative commission balance" because Oracle's previous payments to Plaintiff were greater than the total commissions resulting from the new, lower rate. According to Oracle, after the re-plan, the previous payments caused an overpayment and now Oracle could clawback the "negative commission balance."

72. Oracle's Compensation Department informed Plaintiff that pursuant to the T&C, if she stopped working for Oracle, Oracle would have the right to collect the negative balance from her, including through a lawsuit.

73. Plaintiff could not afford to repay Oracle. As a result, Plaintiff felt she had no choice but to continue working for Oracle for months without being paid any commissions. The new commissions she earned were levied by Oracle to offset the "negative commission balance" resulting from retroactive imposition of the inferior commission rate.

74. Plaintiff resigned from her position at Oracle effective July 2014. Plaintiff resigned as soon as she had earned sufficient additional commissions to pay off the negative commission balance.

75. Other sales employees in Human Capital Management were also re-planned with inferior numeric terms in the same fiscal year.

76. Like Plaintiff, and regardless of the year and their sales group, other sales employees have been deprived of commission payments due to similar re-plans. Like Plaintiff, other Class members have suffered retroactive changes to the numeric terms of commission agreements resulting in a loss of pay.

**FIRST CLAIM FOR RELIEF**
**FAILURE TO PAY COMMISSION WAGES IN BREACH OF CALIFORNIA LABOR CODE AND CONTRACT**
**(On Behalf of Plaintiff and the Class)**

77. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

78. Plaintiff and Class members earned commission wages within the meaning of California Labor Code Sections 200 and 204.1.

79. Oracle has knowingly, intentionally and willfully failed and refused to pay to Plaintiff and Class members the full and complete amount of the commissions they earned. Oracle has operated under and continues to operate under a common policy and plan of failing and refusing to pay full earned commissions through the operation of its re-plan practices.

80. Plaintiff and Class members entered into written commission contracts with Defendant. These contracts provided that Defendant would pay commissions based

on sales credited to Plaintiff and Class members in accordance with the commission rates set forth in their Compensation Plans.

81.  Plaintiff and Class members have performed all of the duties and obligations required of them by Oracle that would entitle them to receive commissions. Plaintiff and Class members have met all lawful conditions precedent to the earning of commissions. Oracle has credited Plaintiff and Class members for sales that are encompassed by their commission contracts.

82.  Oracle relies on contract provisions that allow Oracle to retroactively change commission terms at any time. These provisions are void and unenforceable exculpatory clauses under California Civil Code Section 1668.

83.  Furthermore, these contract provisions that allow Oracle to retroactively change commission terms at any time are unlawful, void and unenforceable under California Labor Code Sections 221, 223 and 2751.

84.  Labor Code Section 221 states: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." California's Industrial Welfare Commission Wage Orders prohibit employers from using earned wages to offset ordinary business costs.

85.  Oracle's use of re-plans to avoid paying earned commissions, including by clawing back previously paid compensation, constitutes unlawful withholdings or deductions of earned wages in violation of Section 221.

86.  Labor Code Section 223 states: "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

87.  Oracle secretly underpays commission wages while purporting to follow the commission rates designated by contract in violation of Section 223.

88.  Labor Code Section 2751 states, in pertinent part: "Whenever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves

commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid."

89. Oracle relies on methods for the computation and payment of commissions that are not set forth in the commission contract in violation of Section 2751.

90. Individually and collectively, Labor Code Sections 221, 223 and 2751 and Civil Code Section 1668 invalidate Oracle's illegal contract provisions and give rise to Plaintiff and Class members' claim for unpaid wages under the valid and enforceable terms of their written commission contracts.

91. Pursuant to California Labor Code §§ 200 et seq., Plaintiff and Class members are entitled to recover unpaid commissions, with interest, attorney's fees, costs, penalties, all in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
### FAILURE TO PAY WAGES UPON SEPARATION
### California Labor Code §§ 201, 202, 203
### (On Behalf of Plaintiff and the Class)

92. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

93. Plaintiff resigned from Oracle and concluded her employment in July 2014.

94. At the time of Plaintiff's separation, Defendant knowingly and willfully failed to pay Plaintiff all of the commission wages she had earned and which had been calculated or could be reasonably calculated, as alleged herein and above.

95. Defendant has operated under and continues to operate under a common policy and plan of failing and refusing to timely pay unpaid wages owed to Plaintiff and Class Members whose employment ended, as required by California Labor Code Sections 201 and 202.

96. As a result of its failure to timely pay separated employees all compensation due, Defendant is liable for statutory waiting time penalties pursuant to

California Labor Code Section 203.

### THIRD CLAIM FOR RELIEF
### UNFAIR COMPETITION
### California Business & Professions Code §§ 17200 *et seq.*
### (On Behalf of Plaintiff and the Class)

97. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

98. Defendant is a "person" as defined under California Business & Professions Code Section 17021.

99. Business & Professions Code Section 17200 defines unfair competition as, *inter alia*, an unlawful business act or practice or an unfair business act or practice.

100. By the conduct alleged herein, Defendant has engaged and continues to engage in a business practice which violates California law, including but not limited to California Labor Code Sections 200, 201, 202, 204, 221, 223, and 2751 and the applicable Industrial Welfare Commission Wage Orders.

101. Defendant's willful failure to pay all earned commission wages and failure to maintain accurate records of commission earnings and deductions constitute unlawful activity prohibited by California Business and Professions Code Section 17200.

102. Defendant's policies, practices and procedures alleged herein constitute unfair business practices under Section 17200. Oracle's commission wage policies, practices and procedures deceive employees about how and what they will be paid and oppress employees who have inherently less bargaining power and inferior information.

103. Furthermore, any failure to pay wages is, by definition, an unfair business practice under Section 17200.

104. As a result of its unlawful and unfair acts, Defendant has reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiffs and the Class Members.

105. Defendant should be made to disgorge these ill-gotten gains and restore to Plaintiff and the Class members the wrongfully withheld wages to which they are

entitled, as well as interest on these wages.

106. Plaintiff and Class members seek all injunctive and preventive relief authorized by Business and Professions Code Sections 17202 and 17203.

107. This action is designed to ensure the enforcement of an important right affecting the public interest and a large number of employees. The necessity and financial burden of private enforcement is great, and the risks to the named plaintiff for stepping forward are also significant. As such, Plaintiff would be entitled to attorneys' fees should they prevail, and such fees should not in the interest of justice be paid out of the recovery.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A. Certification of the claims in this action as a class action under Federal Rule of Civil Procedure 23.

B. Designation of Plaintiff as Class Representative.

C. An award of damages in excess of 150 million dollars;

D. Equitable and injunctive relief to remedy Defendant's violations of state law, including but not necessarily limited to an order enjoining Defendant from continuing its unlawful practices;

E. Statutory penalties under state law;

F. Restitution under state law;

G. Pre-judgment and post-judgment interest, as provided by law;

H. Attorneys' fees and costs under applicable law, including expert fees and costs.

I. Such additional and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims triable by jury.

Dated: February 14, 2017                        Respectfully submitted,

16

COMPLAINT

By: /S/ Xinying Valerian

Felicia Medina
Xinying Valerian
**SANFORD HEISLER, LLP**

*Counsel for Plaintiff and the Proposed Class*